OPINION
Appellant Linda Flory appeals the March 17, 2000 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's four children to the Stark County Department of Human Services (hereinafter "SCDHS").
 STATEMENT OF THE CASE AND FACTS
This case involves four children: Joseph Flory, born July 22, 1996; Chris Flory, born August 2, 1999; Alex Flory, born April 11, 1988; and Dale Flory, Jr., born May 12, 1984. Appellant is the natural mother of Alex, Dale, and Chris. Linda Whiting, aka Pease, whose whereabouts have been unknown for approximately nine years, is the natural mother of Joseph. On June 17, 1998, SCDHS filed a complaint alleging neglect and seeking temporary custody of these children. In a September 9, 1998 Judgment Entry, the trial court found the children to be neglected. On the same day, the trial court filed its judgment entry on disposition, and granted temporary custody of the children to SCDHS. On February 22, 1999, SCDHS filed a Motion to Extend the Temporary Custody. This motion was granted, and the agency's custody was extended until March 19, 1999. On June 28, 1999, SCDHS filed a Motion for Permanent Custody. The Flory children case plan, and its amendments included five goals: 1) parents to complete psychological evaluations; 2) parents to provide routine medical care for the children; 3) parents to obtain appropriate housing; 4) Linda Flory was to complete the parenting skills classes with Goodwill Industries; 5) Dale Flory was to be involved with Parents Anonymous; and 6) parents were to submit to a substance abuse evaluation and follow up at Quest Recovery Services. The trial court conducted a hearing on the motion for permanent custody on December 15, 1999. Ms. Flory testified she was currently unemployed, as she had been laid off from Janson Industries since October, 1999. Ms. Flory was divorced and had not remarried. Ms. Flory acknowledged her children had been in SCDHS custody on three separate occasions, including the present case. In fact, the children had been in custody for a total of 3 years, 2 1/2 months. In previous cases, Ms. Flory attended Goodwill Parenting two times, the Renew program one time, and Quest once. Ms. Flory testified she believed she had done everything Quest Recovery Services asked her to do. Ms. Flory has a long term diagnosis of alcoholism and abuse. She testified she had been sober since 1998 and that she went to Nova for alcoholism in March, 1999. The trial court noted that although Ms. Flory testified she attended Quest for her alcoholism, she presented no proof of attendance and Quest's records did not indicate such attendance. Paula Yoder, Ms. Flory's case manager at Nova, also testified. Ms. Yoder had worked with Ms. Flory for four to six months starting in December, 1998. With Ms. Yoder's assistance, Mr. Flory found adequate housing. Ms. Yoder testified Ms. Flory showed an improvement while in the program and Ms. Yoder never saw signs of alcohol use. Terry Hyde, a counselor/therapist at Nova, also testified. Ms. Hyde had worked with Ms. Flory off and on since 1993. Ms. Hyde assisted Ms. Flory in working on domestic violence issues and testified Ms. Flory's divorce from Dale Flory, Sr. was a major and positive step. Ms. Hyde reported Ms. Flory took her medication regularly and improved in her attendance. Finally, Ms. Hyde noted Ms. Flory had a diagnosis of alcohol abuse in remission, bi-polar disorder and personality disorder. Linda Temsic, a parenting instructor at Goodwill Industries also testified. Ms. Temsic instructed Ms. Flory through January, 1999, at which time Ms. Flory received a certificate of participation. The certificate was the medium level of three possible certificates. Ms. Temsic testified Ms. Flory completed 90% of her goals, and had failed to secure independent housing upon completion of the program. According to Ms. Temsic, Ms. Flory dozed off in class, and at the November 4, 1998, class, Ms. Temsic smelled alcohol on Ms. Flory's breath. Ms. Temsic was also present for each of the eight scheduled visits between Ms. Flory and her children. Ms. Temsic testified Ms. Flory mainly brought fast food, but on occasion, brought some homemade food for the children. Further, Ms. Temsic stated Ms. Flory had a hard time controlling the children. Cynthia Moore, Ms. Flory's previous family service worker with SCDHS, testified in previous SCDHS interventions, similar services were offered to Mr. Mrs. Flory. When asked to compare previous case plans to the current case plan, Ms. Moore described them as being "somewhat duplicative." Norma Thorpe, the SCDHS ongoing case worker, testified regarding Ms. Flory's progress with the case plan. Ms. Thorpe testified she supervised most of the visits between Ms. Flory and her children and noted Ms. Flory was "very, very good on visitation." T. at 68. However, Ms. Thorpe also related that on one occasion, Ms. Flory had inappropriate discussions with her children. Ms. Thorpe acknowledged Ms. Flory had independent housing at the time of the hearing, but questioned how long she would be able to maintain that housing given her lack of employment. Despite the fact mother had completed the case plan, Ms. Thorpe recommended the children not be reunited with mother. Ms. Thorpe had serious concerns about Ms. Flory's ability to handle the children. She stated: I don't think she has that ability [to control the boys]. I don't think she has a sense of danger. I don't think she has the ability to focus on more than one child at a time. She can focus on one and be talking to them, and the other children will come in and I mean their really they almost get in her face yelling her name to get her attention. * * * But she has no, I mean those boys when were in the park, they will go up to the top of the slides and they will jump off, and that's, five, six, seven feet up in the air. They will get on that — there is a merry-go-round and they'll get on there and she won't see them. The little boy went beneath the thing and got drug around a couple times. But no matter how many times you tell them they can't do this you are not protecting them, you are not keeping them safe. * * * She could not control them or get them to listen to her in any way, shape or form.
T. 71-72.
In its Findings of Fact and Conclusions of Law, filed March 17, 2000, the trial court noted SCDHS had ten years of history with this family. The father had been in and out of incarceration and even though the parents had submitted to offered services they continued to fall back into their old habits. The trial court further noted the children had been, at that time, in foster care thirty-four months of their lives. While both parents had a mental health diagnosis, neither had presented sufficient evidence to indicate they had their problems under control. In a March 17, 2000 Judgment Entry, the trial court found the children were neglected as defined by R.C. 2151.03; the children could not be placed with either parent at that time or within a reasonable period of time; and the children should not be placed with either parent. The trial court found in was in the best interest of the children permanent custody be granted to the SCDHS. It is from this judgment entry appellant prosecutes this appeal assigning the following as error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AT LAW WHEN IT FAILED TO RECOGNIZE THAT THE CHILDREN COULD BE RETURNED TO APPELLANT WITHIN A REASONABLE TIME.
 A. THE DEPARTMENT FAILED TO PROVIDE CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT FAILED TO REMEDY THE PROBLEMS THAT INITIALLY CAUSED THE CHILDREN TO BE REMOVED.
 B. THE DEPARTMENT FAILED TO PROVIDE CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT HAD A CHRONIC MENTAL ILLNESS WHICH WOULD PROHIBIT HER FROM PARENTING HER CHILDREN.
 C. THE TRIAL COURT FAILED TO APPLY O.R.C. 2151.414(E)(1) WHICH REQUIRES IT TO CONSIDER THE SERVICES UTILIZED BY APPELLANT TO CHANGE PARENTAL CONDUCT TO ALLOW APPELLANT TO RESUME AND MAINTAIN PARENTAL DUTIES.
This case comes to us on the accelerated calender. App.R. 11.1, which governs accelerated calender cases, provides, in pertinent part: (E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form.
This appeal shall be considered in accordance with the aforementioned rule.
 I
Appellant presents one assignment of error divided into three parts. Appellant maintains the trial court abused its discretion by failing to recognize the children could be returned to appellant within a reasonable period of time. Appellant further contends this decision was faulty because SCDHS failed to provide clear and convincing evidence appellant failed to remedy the problems causing the children to be removed, and appellant had a chronic mental illness prohibiting her from parenting her children. Finally, appellant maintains the trial court failed to apply R.C. 2151.414(E)(1), which requires a consideration of services utilized by appellant to change her conduct and to resume and to maintain parental duties. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279. The relevant statute is R.C. 2151.414. That statute provides, in pertinent part: (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
* * *
 (2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.
* * *
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
* * *
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
* * *
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code;
* * *
(16) Any other factor the court considers relevant.
We have reviewed the record and find the trial court's decision was supported by the manifest weight of the evidence. Specifically, we note the testimony of Ms. Thorpe, as set forth supra in the Statement of the Case and Facts as it related to appellant's inability to control her children, and inability, after using services provided, to remedy the situation which caused the children's initial removal. The trial court noted appellant's long term diagnosis of alcoholism, now in remission, and abuse. However, Mr. Flory's mental illness was also documented through the testimony of Ms. Hyde. Finally, we find the trial court did consider appellant's utilization of services offered by SCDHS. The trial court detailed not only the services appellant utilized in this intervention, but also the services provided to appellant in previous SCDHS interventions. For these reasons, we find the trial court's decision was supported by the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
The March 17, 2000 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 ________________________ HOFFMAN, P.J.